H. W. REICHERT, Appellant, v. RUSSELL MOTOR CAR COM-PANY, Appellee.

**SALES:** Termination of Contract Terminates Restriction on Resale.
1 A buyer of property who simply contracts that he will not resell the property outside certain prescribed territory may, without liability for damages, sell where he pleases *after* the other party to the contract has terminated it, pursuant to a reserved right so to do.

**CONTRACTS:** Operation and Effect of Termination. A legally terminated contract cannot control transactions subsequent to the termination.

**CONTRACTS:** Deposit to Insure Contract. A deposit of money for the purpose of insuring performance of a contract in a specified particular may not, after such performance, be withheld for another and different purpose.

**EVIDENCE:** Indefinite Non-Trade Terms. A vague, meaningless, and non-trade term, employed in a contract, may not be utilized as a framework around which to build a contract by parol.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

JANUARY 23, 1919.

REHEARING DENIED MAY 21, 1919.

THE opinion states the case. From a judgment in favor of the defendant, the plaintiff appeals.—*Reversed and remanded.*

*J. C. France,* for appellant.

No appearance for appellee.

WEAVER, J.—In the year 1914, plaintiff and one Davis were partners, doing business as Reichert & Davis, a firm which has since been dissolved, the plaintiff succeeding to its business and assets. While the firm was still in being, it entered into a contract with the defendant motor car company by which the latter granted to the firm the right to sell Studebaker motor cars and parts in certain prescribed territory. As part of the transaction, Reichert & Davis, in addition to an undertaking to purchase and pay for its supply of cars, were required to deposit and maintain in the hands of the defendant, during the contract period, the sum of $250, as a "guarantee" for the payment of their "parts account." The deposit was made, as agreed. The contract has since been terminated; and plaintiff, as successor to the firm of Reichert & Davis, sues for a return of the deposit, less an account for parts purchased, to the amount of $35.35.

1. SALES: termination of contract terminates restriction on resale.

The defendant admits the contract and the deposit, but denies its liability to return the same, because of alleged violation of the contract, by which plaintiff or his firm had sold automobiles in the territory of another dealer, who was thereby damaged to the extent of $531.90, the claim for which has been assigned to defendant, who pleads it as a counterclaim in this action.

There was a trial to a jury, and verdict and judgment for the defendant for the sum of one dollar. The plaintiff appeals.

I. The contract, by its terms, was limited to expire July 1, 1915, but the right was reserved to either party to cancel it at any time, on giving the other ten days' written notice. Acting upon the privilege thus reserved, the defendant did, on February 25, 1915, give the firm of Reichert & Davis written notice of its election to cancel the contract. It is shown without material dispute that, after receiving this notice, Reichert & Davis declined to receive other cars from the defendant, and notified it that, the contract formerly made having been canceled, they had decided to retire from the automobile business. It further appears that, upon the cancellation of the contract, the partnership of Reichert & Davis ceased to exist or do business. Defendant admits giving the notice of cancellation, but seeks to avoid its effect by a claim that, at some later date, and before plaintiff had replied thereto, it "reinstated" the contract. When the contract was canceled, it is shown that Reichert & Davis were left with several unsold cars on hand, and after the dissolution of the partnership, Davis sold three of them, which sales defendant alleges were made outside of the territory assigned to the firm; and it is on account of these sales that the defendant sets up its counterclaim. The sales were made at or near the town of Clarence, which was said to be within the territory assigned to one Hart, another subdealer. It is conceded, however, that Hart's contract was also canceled, on February 25, 1915, and at the time of these sales, neither Hart nor Reichert & Davis had any contract relations with the defendant. Hart, as a witness, testifies that he never made any claim against Reichert or Davis, and says, in substance, that, if he had any claim against anybody, it was the defendant, but that "I never made any particular claim, because I didn't know I would be entitled to it." He further says that, while he made a written assignment of the

2. CONTRACTS: operation and effect of termination.

claim to defendant, he was not paid for it, and he had no agreement or understanding that he would ever receive anything for it if anything should be recovered thereon by the defendant. Among the letters passing between the parties are several in which the defendant refuses to pay over the deposit. In one, the reason given is that the defendant proposes to "hold it responsible" for any loss sustained by Hart for the sales made by Davis; again, it says the deposit "will be held on infringement in that territory;" while the final statement is, "As soon as you make settlement with Mr. Hart and get a release from him for the cars sold in that territory, we will return your deposit."

The court charged the jury, among other things, that, even if the contract was canceled on February 25, 1915, Reichert & Davis, and each of them, were bound to keep within their territory, and if either sold cars in Hart's territory, then the amount of commissions on these sales, if there were any, would constitute a legitimate counterclaim against the deposit in defendant's hands.

This instruction was challenged as an incorrect statement of the law applicable to the facts in the case, and we think it cannot be approved. In the first place, the deposit was made for a specific purpose, to guarantee the plaintiff's account for "parts," and nothing else; and this is admitted not to exceed $35.35, thus leaving $264.65 and interest due plaintiff. Neither the contract nor the law authorized the defendant to withhold its repayment to secure a claim of some other character, or in favor of some third person. In the next place, we find nothing in the contract which binds the plaintiff or Reichert & Davis to pay over to Hart or to defendant the amount of the so-called "commissions," even if such contract were still in force. These so-called subdealers were not selling cars on commission, or as agents. They were buying the cars outright, and when

3. CONTRACTS:
deposit to in-
sure contract.

purchased, the cars were their individual property; though, so long as the contract continued in force, they were bound to sell at stated prices, and within stated territory. When, however, the parties abandoned or canceled their contract, by agreement or pursuant to a reserved right so to do, we are inclined to the view that the shackles which bound Reichert & Davis to sell their property only within a prescribed territory were broken. So long as the contract was in force, each was giving or yielding something in return for what the other was giving or yielding to him, and each could hold the other in damages for failure to perform his agreement. When the contract was canceled, it ceased to exist; and it had no controlling force and effect to sustain an action by either against the other, on account of any matter or thing thereafter occurring. Cancellation of an agreement necessarily implies a waiver by each party of all rights thereunder. *Whedon v. Lancaster County,* 80 Neb. 682; *Capital City Mut. F. Ins. Co. v. Detwiler,* 23 Ill. App. 656. Even if the contract were still alive, it makes no provision binding the plaintiff or Reichert & Davis to pay any specified amount as damages or penalty for sales made outside the prescribed territory, and the instruction would still be erroneous. There is a vague stipulation that the parties would be governed by the "Studebaker policy," and defendant sought, and over the objection of plaintiff was permitted, to give this phrase force and effect by the testimony of a witness, as follows:·

4. Evidence: indefinite nontrade terms.

"Q. Now I notice this contract refers to the Studebaker 'Policy' all through. Now what is the 'Studebaker Policy?' (Objected to as incompetent, irrelevant, and immaterial. Objection overruled. Plaintiff excepts.) A. The policy of the Studebaker contract is that the man that the territory is given to has full control over that territory, and he is to have the benefit of the sale of cars in

that territory, and he makes a deposit buying the territory. Q. What is the Studebaker policy in case of infringement of the territory? (Objected to as incompetent, irrelevant, and immaterial, and that the contract between the parties represents their entire agreement, and that the question now calls for some matter on the part of the dealer and the Studebaker Company which was not disclosed to the subdealer, plaintiff in his action. Objection overruled, and plaintiff excepts.) A. The policy is for the dealer to hold the deposit to pay the dealer that the car goes into his territory. (Plaintiff moves to strike out the answer for the same reason given in the objection, and that the contract specifically provides what the deposit shall be held for, and is contrary to the terms of the written contract in evidence. Motion overruled, and plaintiff excepts.) Q. Now, Jake, what is the policy with reference to the adjustment of the two claims,—that is, where A goes into B's territory and sells a lot of cars, what does A have to do B? (Same objection as to the previous question. Overruled, and plaintiff excepts.) A. He has to pay for the infringement—the full commission. Mr. Hart had Dayton and part of Fairfield. Clarence is in Dayton Township. Up until July 14, 1915, correspondence from Reichert & Davis was on paper with the words 'Studebaker' at the top."

Both plaintiff and Hart testify that they know nothing of the "Studebaker policy," and have no idea what is meant by it; nor is there any proof whatever that it is a trade term, carrying any particular significance to the minds of dealers. Surely, written contracts cannot be built up in this manner by parol around the meager frame of two vague and meaningless words; and this testimony should have been excluded.

The counterclaim is based upon a demand which defendant alleges it holds by assignment from Hart. But Hart made and makes no demand or claim against the

plaintiff, and defendant acquired nothing by the assignment. Defendant has and pleads no claim to recover damages or "commissions" on its own account; for the contract on which it places its reliance provided specifically that it would not be liable to a subdealer in such cases.

There was no defense to plaintiff's demand for repayment of his deposit, and we look in vain for any substantial evidence on which a finding in defendant's favor upon its counterclaim can be approved. Neither is there any substantial evidence that the canceled contract was ever reinstated or renewed. The plaintiff's motion for new trial for lack of evidence to support the verdict should have been sustained.

Because of the errors noted, the judgment below will be reversed, and cause remanded for new trial.—*Reversed and remanded.*

GAYNOR, PRESTON, and STEVENS, JJ., concur.